# Richmond.

SOUTHERN RAILWAY CO. v. COMMONWEALTH AND ANOTHER.

DECEMBER 6, 1900.

1. RAILROADS—*Connections—Railroad Commissioner—Proceedings in Circuit Court—Parties.*—The proceedings before the Railroad Commissioner provided for by the act of March 3, 1892 (Acts of 1891-'2, p. 965), and his inability to have the cause of complaint corrected, are conditions precedent to the exercise by the circuit courts of the jurisdiction conferred on them by said act. But when the jurisdiction of such courts is properly invoked, they hear the case *de novo,* and when the complaint is that two railroad companies fail to make proper connections, both companies must be made parties defendants to the proceeding by the Commonwealth, in order that the court may adjust all matters or cause of complaint. The fact that one of the companies is willing to adopt the suggestion of the commissioner, and to obey his directions, does not dispense with the necessity of making such company a party to the proceedings in the Circuit Court.

2. COMMON CARRIERS—*Railroads—Connections—Proceedings in Circuit Court—Future Changes of Schedules.*—An order of a circuit court, proceeding under the act of March 3, 1892, (Acts 1891-'2,) requiring common carriers to make specified changes in their schedules so as to effect a given connection, should provide that they may thereafter agree upon a new schedule not in violation of law, and that, in the absence of such new schedule, either party may, after reasonable notice to the other and to the Attorney for the Commonwealth of the county in which the suit is pending, apply to the court, or to the judge in vacation, for any modification in its order that may be shown to be proper.

Error to a judgment of the Circuit Court of Shenandoah county, rendered January 25, 1900, in a proceeding by notice in writing, wherein the Commonwealth of Virginia was the

plaintiff, and the plaintiff in error and the Baltimore and Ohio Railroad Company were the defendants.

*Amended and affirmed.*

There were no formal pleadings in this case. The notice by which this proceeding was set on foot was in the words and figures following—to wit:

" To the Baltimore and Ohio Railroad Company, Lessee of the
  Winchester and Strasburg Railroad Company, and to the
  Southern Railway Company:

" Whereas, complaint was made to me of the failure of the No. 14 train of the Baltimore and Ohio Railroad Company (lessee, as aforesaid) and of the No. 36 train of the Southern Railway Company to connect at Strasburg Junction, in the county of Shenandoah; and,

" Whereas, I thereupon did, on December 15, 1899, in writing, request the said Baltimore and Ohio Railroad Company (lessee, as aforesaid) and the Southern Railway Company to correct the said cause of complaint; and,

" Whereas, the said companies by their respective officials appeared before me on the said 15th day of December, 1899, and thereupon the whole cause of complaint and the contention of the parties, respectively, was heard and considered by me; and,

" Whereas, thereupon, I reached the following conclusion and committed the same to writing, as follows—to wit: This matter having this day been duly investigated in pursuance of due notice to said railroads, I am of opinion that train No. 14, of the Winchester and Strasburg railroad (operated by the Baltimore and Ohio Railroad Company) shall be held at Strasburg Junction for connection with train No. 36, of the Southern Railway Company, and that the schedule of said train of

the Southern Railway Company shall be changed so as to make the arrival thereof at Strasburg Junction not later than 5:35 P. M.

"And thereupon, on December 16, 1899, I did, in writing, request the companies, aforesaid, to change their respective schedules of the trains No. 14 and No. 36, respectively, so as to conform to the conclusion reached by me, and this to make convenient connection at Strasburg Junction and to remove the cause of complaint; and,

"Whereas, in accordance with my said written request, the Southern Railway Company did so change its schedule as to conform to my conclusions aforesaid, but the Baltimore and Ohio Railroad Company (lessee, as aforesaid) refused, and still refuses so to do, and my said written request to it has been and remains unheeded and uncomplied with. Therefore, in the name of the Commonwealth, I hereby give notice that on the 23d day of January, 1900, at Woodstock, I shall move the Circuit Court of Shenandoah county, Virginia, to adjust said complaint and all matters and cause of complaint in connection therewith, and I shall ask the said court to require that the said Baltimore and Ohio Railroad Company (lessee, etc., as aforesaid) shall hold said train No. 14, operated by it, as aforesaid, at Strasburg Junction for connection with said train No. 36 (now No. 12) of the Southern Railway Company; and that the schedule of said Baltimore and Ohio Railroad Company (lessee, as aforesaid) shall be changed in conformity thereto.

(Signed)      "JAMES C. HILL,
      "Railroad Commissioner,
      "for and in behalf of the Commonwealth of Virginia."

*Eppa Hunton, Jr.*, for the plaintiff in error.

*Attorney-General A. J. Montague, James H. Williams, R. M. Ward*, and *James Bumgardner, Jr.*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a proceeding under section 14 of an act approved March 3, 1892, entitled "An act to further regulate and control common carriers doing business in this State and further defining the duties of the Railroad Commissioner in relation thereto." (Acts 1891-'2, p. 965.) That section provides that "whenever, upon complaint made to the Railroad Commissioner, or from his own knowledge, and after he has given the common carrier complained of reasonable notice and an opportunity to be heard, and has fully investigated the complaint, it shall appear to said commissioner that any common carrier doing business in this State has failed or neglected in any respect or particular to comply with the provisions of this act or with any of the laws of this Commonwealth relating to the transportation of freight and passengers by common carriers, especially in regard to connections with other railroads, the rates of toll and the time schedule, he shall, in writing, request the said common carrier, or person operating the company, to correct the cause of complaint. If after ten days the said company neglects or refuses, the said commissioner shall, in the name of the Commonwealth, proceed to have all matters or cause of complaint adjusted by the circuit court, or the judge thereof in vacation, of the county or city wherein the cause of complaint arose, having first given said common carrier, or person operating the company ten days' notice, which notice shall contain the cause of complaint. The case shall be heard by the said circuit court, or the judge thereof in vacation, on said notice, and no other pleading shall be required. The said court or judge if its decision is in favor of the Commonwealth, shall, by mandatory or restraining order, prevent the common carrier or person complained of from further continuing to violate the law."

The object of the proceeding was to compel the Baltimore

and Ohio Railroad Company, and the Southern Railway Company, to re-establish a connection between passenger train No. 14 of the former road and train No. 36 (now No. 12) of the latter road, at Strasburg Junction, which had been made by their trains prior to December 10, 1899.

Upon complaint being made to the Railroad Commissioner, he, after giving notice to the railroad companies, investigated the complaint and reached the conclusion that it was the duty of these companies to restore the connection, and suggested what ought to be done by each company to accomplish that end. The Southern Railway Company accepted his suggestion and changed the schedule of its train. The Baltimore and Ohio Railroad Company declined to comply with his suggestion, and continued to run its train as before. Thereupon, the Railroad Commissioner, in the name of the Commonwealth, gave notice to both railroad companies (reciting in the notice the proceedings had before him and the action of each company in reference thereto), that he would move the Circuit Court of Shenandoah county "to adjust said complaint and all matters, and cause of complaint in connection therewith," and that he would "ask the court to require that the said Baltimore and Ohio Railroad Company  *  *  *  should hold said train No. 14  *  *  * at Strasburg Junction for connection with said train No. 36 (now No. 12) of the Southern Railway Company; and that the schedule of the Baltimore and Ohio Railroad Company  *  * shall be changed in conformity thereto."

When the case came on to be heard in the Circuit Court, the Southern Railway Company asked that the proceeding against it be dismissed on the ground that it appeared that it had arranged its schedule in accordance with the request of the Railroad Commissioner. The court overruled its motion, and that action of the court is assigned as error. .

The counsel of the Southern Railway Company insists that inasmuch as that company had complied with the request of the

Railroad Commissioner, there was no cause of complaint against it, and therefore it ought not to have been impleaded. This would be true if the circuit courts were made merely ministerial agencies to enforce the requests or suggestions of the Commissioner. But this was not, as is conceded, the intention of the Legislature. The Commissioner is charged with the duty of investigating the failure or neglect of common carriers to comply with the laws of the Commonwealth relating to the transportation of freight and passengers, whether such failure or neglect be within his own knowledge or be brought to his attention by complaint made to him. After giving the offending carrier or carriers an opportunity to be heard, if upon full investigation he ascertains that there is a violation of such laws, it is his duty to request the carrier or carriers, as the case may be, to correct the cause of complaint, and if it be not done in ten days it becomes his duty, in the name of the Commonwealth, to bring the matter before the circuit court that it may adjust "all matters or cause of complaint." The "all matters or cause of complaint" referred to is not the failure or refusal of one or the other of the carriers to comply with the commissioner's request, *but their failure to correct the cause of complaint.* The proceedings before the Commissioner and his inability to have the cause of complaint corrected are conditions precedent to the exercise of the jurisdiction conferred upon the Circuit Court. When its jurisdiction is invoked and attaches, it must investigate the cause of complaint after notice to the party or parties who are charged with violating the law, and when this has been done, and its decision is in favor of the Commonwealth, it must put an end to such violation by a mandatory or restraining order. In order to perform this duty, it must of necessity have the parties charged with violating the law before it, and not merely the party which has declined to comply with the Commissioner's request. The court must hear the case *de novo.* How can this be done without notice to the parties charged with

violating the law? In a case like that under consideration, where the complaint is that two railroad companies ought to make connection, but do not, how is the court to investigate the matter and enforce its order if one of the carriers is not before the court?

The language of the act, as it seems to us, requires that all the parties charged with violating the law, and who were parties to the proceeding before the Commissioner, must be parties to the proceeding in the Circuit Court; but if the language of the act does not expressly require this, there is another and a conclusive reason why they should be parties, and that is, that the court cannot in this proceeding perform the duties imposed upon it without having before it the parties charged with violating the law, so that they may be heard and the orders of the court be made effective.

Prior to December 10, 1899, the Southern Railway Company ran a morning train from Washington to Manassas Junction on its main line, and from there over a branch line to Harrisonburg. This train (No. 9) left Washington at 8:01 A. M., reaching Strasburg Junction at 12:25 P. M., and arriving at Harrisonburg at 2:00 P. M. Train No. 12 left Harrisonburg at 3:10 P. M. for Strasburg Junction, arriving there at 5:08 P. M., and reaching Manassas at 8:32 P. M., making connection with its main line train, which reached Washington at 9:40 P. M.

The Baltimore and Ohio Company ran a morning train from Harper's Ferry to Strasburg Junction, leaving the Ferry at 10:40 A. M., after the arrival there of its main line train from Baltimore and Washington, making close connection at Strasburg Junction with train No. 9 of the Southern, which reached there, as before stated, at 12:25 P. M. This train No. 14 of the Baltimore and Ohio was held at Strasburg Junction until after the arrival of the east-bound train No. 12 of the Southern at 5:08 P. M., leaving there on its return at 5:15 P. M., and

Opinion.

arriving at Harper's Ferry at 7:05 P. M., making connection with its main line train from the West.

The language of the act, as it seems to us, requires that all business in the Valley of Virginia south of Strasburg Junction the choice of routes, and enabled them to return the same day by either route. Travel originating at Harper's. Ferry and at points between there and Strasburg Junction were enabled to go as far south as Harrisonburg and return the same day to the point of departure. By it, the delivery of mail and the shipment of express was expedited. This schedule seems to have been generally satisfactory to the public, and to the sections tributary to each road, except to the people between Strasburg Junction and Harrisonburg and the business people of the last-named place. They were dissatisfied with the schedule because it did not give a longer interval between the arrival of train No. 9, and the departure of train No. 12, so as to give better facilities to the people of Harrisonburg to receive their morning's mail by train No. 9, and to answer it by train No. 12, and also to allow the people going to Harrisonburg a longer time in which to transact their business.

To remove the complaint, it seems, the Southern Railway Company changed its schedule on the 10th of December, 1899, so that train No. 12 left Harrisonburg at 3:40 instead of 3:10 P. M. Under that schedule, train No. 12 did not reach Strasburg Junction until 5:40 P. M., twenty-five minutes after the leaving time of the Baltimore and Ohio train No. 14, thus breaking the connection which had theretofore been made, and compelling passengers for points north of Strasburg Junction on the Baltimore and Ohio road, and its connections, to lie over at Strasburg Junction until 10:50 that evening for a freight train which carried passengers, and which was generally behind time, or until 8:20 the next morning, the leaving time of the north-bound passenger train. This action of the railroad companies in breaking the connection of trains Nos. 12 and 14 at Strasburg Junction,

and their failure or refusal to restore the connection under the old or any other schedule was, we think, under the facts of this case, a violation of section 4 of the said act of March 3, 1892, which is as follows:

> 4. "All common carriers subject to the provisions of this act shall, according to their respective powers, and with due regard to the exigencies of their other traffic, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and for receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such common carrier to establish or maintain unremunerative train service, or to give the use of its tracks or terminal facilities to another carrier engaged in a like business."

It was not a matter of serious consequence to the public whether the connection under consideration was made a little earlier or a little later in the day, but it was a matter of moment to them that it should be made, and the railroad companies ought to have agreed upon a connection that would have been fair and just to the public and the localities to be accommodated by them, and which at the same time would best subserve their own interests.

The Circuit Court being of opinion that the connection in question ought to be made, ordered the railroad companies respectively to arrange the schedules of trains Nos. 12 and 14, within fifteen days after the adjournment of the court, so that they would connect at Strasburg Junction, and if they failed within that time to agree upon a proper schedule, it enjoined the Southern Railway Company from making the time of the arrival of train No. 12 at Strasburg Junction later than 5:22 P. M., and enjoined the Baltimore and Ohio Railroad Company from making the departure of its train No. 14 from that Junction earlier than should be necessary for the proper transfer of passengers and traffic from Train No. 12 to train No. 14, thus

requiring the Southern to bring its train No. 12 to Strasburg Junction at least eighteen minutes earlier than its schedule time, and the Baltimore and Ohio to hold its train No. 14 at the Junction from twelve to fourteen minutes (which includes time for transferring passengers and traffic from train No. 12) after its schedule time for leaving. Under the court's order, train No. 12, leaving Harrisonburg on its schedule time, would have one hour and forty-two minutes to run to Strasburg Junction, a distance of forty-nine and one-fifth miles, and train No. 14 could reach Harper's Ferry on its schedule time by running fifty-one miles in about one hour and thirty-eight minutes, and each would be enabled to make its regular connection with its main line. There were doubtless some inconveniences to both roads and their patrons resulting from this change of schedules, but under all the circumstances of the case, without discussing them further, we cannot say that the Circuit Court did not properly perform the delicate and difficult duty imposed upon it, or that its order is erroneous, except in so far as it failed to provide that the railroads might, after the court's change in the schedule went into effect, agree upon a new schedule not in violation of law, and that either road, in the absence of such new schedule, might, after reasonable notice to the other and to the attorney for the Commonwealth for Shenandoah county, apply to the court or judge in vacation for such modification in its order of January 25, 1900, as it might show to be proper.

The order of the Circuit Court in these respects will be amended, and as amended, affirmed.

*Amended and affirmed.*